IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARK GARABEDIAN | : | CIVIL ACTION |
| v. | : | |
| LONE STAR STEAKHOUSE & SALOON | : | NO. 06-3115 |

**MEMORANDUM AND ORDER**

     Mark Garabedian worked as a general manager for Lone Star Steakhouse & Saloon from 1998 until he was fired on June 1, 2006. Prior to his termination, he exercised his rights under the Family Medical Leave Act and was away from work from February 22, 2006, until May 17, 2006. Garabedian asserts that his termination was in violation of the FMLA on two grounds–interference and retaliation. Before me is Lone Star's motion for summary judgment. For the reasons that follow, I will grant defendant's motion for summary judgment on the interference claim and deny the motion as to the retaliation claim.

I. Interference Claim

     Garabedian's claim of interference asserts that, "Defendant failed to properly replace Plaintiff to the same or similar position he held prior to him [sic] exercising his rights under the FMLA by inserting a second general manager at the Langhorne location." This claim fails as a matter of law.

     The FMLA does not forbid an employer's finding an interim replacement for an absent employee. Instead, it requires the employer to reinstate the absent employee to an equivalent position even if he was replaced while on FMLA leave. *See* 29 C.F.R. § 825.214(a).

1

The FMLA makes it "unlawful for any employer to interfere with" an employee's rights under the act. 29 U.S.C. § 2615(a)(1). "Interfering with" includes "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave. It would also include manipulation by a covered employer to avoid responsibilities under FMLA." 29 C.F.R. § 825.220(b). Additional examples all address preventing an employee from *qualifying* for leave. By contrast, the discrimination and retaliation provisions are discussed solely in terms of actions taken against employees who "*have used* FMLA leave." *Id.* 825.220(c) (emphasis added).

The Third Circuit recently clarified the difference between an interference claim and a retaliation claim under the FMLA. *Callison v. Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005). The Court noted that the interference provision sets a floor for employer conduct and requires that qualified employees be allowed to take leave and be reinstated with equivalent pay and working conditions. "An interference action is not about discrimination, it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA." *Id.* at 120. The retaliation provision, alternatively, prohibits employers from using "the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions." *Id.*

Garabedian admits that he was permitted to take FMLA leave beginning on February 22, 2006, and ending May 17, 2006. None of Lone Star's upper management ever expressed concern over his attendance. *Stip. Facts*, ¶ 11, *Def.'s Mot. Summ. J.* Lone Star did hire a manager, Brent Harvell, to serve in Garabedian's place while he was on leave, and when Garabedian returned to work Harvell was transferred to another restaurant within five days. Although Harvell was hired

to permanently replace Garabedian after he was terminated, it is undisputed that Garabedian was reinstated at the same position (general manager) for the same wage ($62,000) at the same store (Middletown, Pennsylvania).  Plaintiff therefore has not shown that Lone Star interfered with his right to take FMLA leave or his right to be reinstated.

Plaintiff cites *Campbell v. Gambro Healthcare, Inc.*, 2007 U.S. Dist. LEXIS 5545 (10th Cir. Mar. 9, 2007) to support his interference claim, but this case is neither persuasive nor relevant.  Plaintiff mischaracterizes the holding in *Campbell*[1] and argues that even when an employee is reinstated, he may pursue an interference claim to avoid creating a "perverse incentive for employers to make the decision to terminate during an employee's FMLA leave, but allow the employee to return for a brief period before terminating her so as to insulate the employer from an interference claim." *Id.* at 13.  However, plaintiff omits the preceding sentence from the Court's opinion, which states, "When, as is the situation before us, *the employer cites only factors predating the employee's return to work* to justify the adverse action, the plaintiff is not foreclosed from bringing an interference claim. *Id.* (emphasis added).  Garabedian's complaint is based on disciplinary action taken *after* he returned from leave and does not assert any incidents that predate his leave as cause for his termination. *Compl.* ¶ 20.  Thus, *Campbell* does not apply.

To repeat the obvious, because Garabedian was permitted to take FMLA leave and was reinstated to the exact same position he held prior to his leave, his interference claim fails.

---

[1] Plaintiff states in his response that the Tenth Circuit reversed the lower court.  Although the Tenth Circuit did reverse the lower court's refusal to consider the plaintiff's interference claim, it nonetheless affirmed the lower court's granting to grant summary judgment.

II. <u>Retaliation Claim</u>

Lone Star asserts that Garabedian's FMLA retaliation claim fails for two reasons. First, because he cannot establish a prima facie case, and second, because even if he has met this initial hurdle, he cannot show Lone Star's proffered legitimate, business reason for his termination is pretextual.

To establish a prima facie case, Garabedian must show a causal link between his protected FMLA leave and his termination. The two main factors in determining a causal link are timing and a pattern of antagonism between the protected activity and the adverse employment action. *Abramson v. William Patterson Coll. of N.J.*, 260 F.3d 265, 288 (3d Cir. 2001). These factors are not exclusive. Evidence of retaliation "is not limited to timing and demonstrative proof, such as actual antagonistic conduct or animus. Rather, it can be other evidence gleaned from the record as a whole from which causation can be inferred." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000). "Our caselaw has set forth no limits on what we have been willing to consider." *Id.*

If the plaintiff can establish a prima facie case, the defendant must articulate a non-discriminatory reason for termination. Once the defendant has done so, the plaintiff must show the employer's reason is a pretext for its unlawful act. Lone Star has provided evidence that it fired Garabedian for insubordination, unprofessional conduct, and physical contact with employees. To survive summary judgment Garabedian must therefore point to some evidence from which a factfinder could reasonably disbelieve the employer's articulated, legitimate reason. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). Garabedian may do so by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's

4

proffered legitimate reasons for its action that a reasonable fact finder *could* rationally find them 'unworthy of credence.'" *Id.* at 765.

In evaluating an employee's claim of pretext, factors to weigh include timing, an intervening pattern of antagonism, and inconsistencies which discredit the employer's proffered reason. *See Farrell*, 206 F.3d at 280-81; *Abramson*, 260 F.3d at 289. Because the tests for prima facie casual connection and pretext overlap, I discuss them together.[2]

A. Timing

Garabedian was fired just over six weeks (forty-five days) after he returned from FMLA leave. While this is not "unusually suggestive" enough to establish causation by itself, it is a short period of time which factors into the causal inference. *See Fasold v. Justice*, 409 F.3d 178, 189-90 (3d Cir. 2005) (discussing the less than three month proximity and noting that "a short period of time" may provide the evidentiary basis of an inference of retaliation); *Zelinski v. Pa. State Police*, 108 Fed. Appx. 700, 706 (3d Cir. 2004) (stating two months is "much more 'unusually suggestive' than a period of ten months"); *Silvestre v. Sera Care, Inc.*, 2002 U.S. Dist. LEXIS 25267, *26 (E.D. Pa. Dec. 30, 2002) (noting that two months "appears to be a relatively short time" between the protected activity and adverse action).

B. Pattern of Antagonism

The Third Circuit has held a causal connection was established where a pattern of

---

[2] "[B]y acknowledging that evidence in the causal chain can include more than demonstrative acts of antagonism or acts actually reflecting animus, we may possibly conflate the test for causation under the prima facie case with that for pretext. . . . [E]vidence supporting the prima facie case is often helpful in the pretext stage and nothing about the McDonnell Douglas formula requires us to ration the evidence between one stage or the other." *Farrell*, 206 F.3d at 286. *See also Zelinski v. Pa. State Police*, 108 Fed. Appx. 700, 707 (3d Cir. 2004) ("If it is determined that [the proffered] reasons are merely pretextual, then they can be considered inconsistent reasons for the adverse employment action, ultimately leading to a conclusion of causation.")

antagonism, as evidenced by "unfair criticism" and "unwarranted discipline," was shown in the period between the protected activity and the adverse employment action. *Zelinski*, 108 Fed. Appx. at 707 (vacating grant of summary judgment where trial court found no causal connection although plaintiff had pointed to four incidents of ongoing antagonism, including false criticism, unfair criticism, a disciplinary writeup, and unwarranted disciplinary counseling).

  The Third Circuit has also found substantial evidence supporting a retaliation claim and a causal connection where a plaintiff was subjected to a 'constant barrage of written and verbal warnings . . . and disciplinary action, all of which occurred soon after plaintiff's [protected activity] and continued until his discharge.'" *Robinson v. SEPTA*, 982 F.2d 892, 895 (3d Cir. 1993) (affirming judgment in favor of the plaintiff). In discussing the pattern of antagonism, the Court noted the trial judge's findings that Robinson was harassed by repeated discipline for minor matters and that his employer tried to provoke him to insubordination, subjecting him to unusually close supervision. *Id.*

  Although I rule on summary judgment and therefore lack the benefit of findings of fact present in *Robinson*, Garabedian has provided evidence of similar disciplinary action and provocation which a reasonable factfinder could conclude constituted a pattern of antagonism. Garabedian has shown that he received numerous written and verbal warnings beginning in the first week he returned from FMLA leave and culminating in at least one written warning each day from his district manager, Tim Wagner, in the four days leading up to his termination. Garabedian has also provided evidence that his supervisors subjected him to closer scrutiny than other managers. Wagner along with Joseph Weiland, plaintiff's regional manager, visited the restaurant much more frequently in the six-week period after Garabedian's return from FMLA

6

leave than at any time prior to his leave or since his termination.[3]

### C. Inconsistencies

Lone Star argues that it has been consistent in stating its reason for terminating Garabedian was based on his insubordination. However, I may consider inconsistencies beyond just those regarding the termination and I find two inconsistencies to be significant.

Lone Star argues, and Wagner testified in his deposition, that in the time period when Garabedian returned from FMLA leave, Wagner only spoke about Garabedian with employees *who approached him*. *Wagner Dep.* at 37. Weiland also testified that he did not approach any employees regarding Garabedian, but that four employees approached him, including James Fleig and Meghan Redding. *Weiland Dep.* at 51.

However, Fleig said, "[Wagner] was at the store and *pulled me aside* right when I first came in" and that "[Weiland] *had come up to me* and said, 'I heard from Tim that you had an incident with a guest . . . .'" *Fleig Dep.* at 21-22 (emphasis added). Redding also contradicts the defendant's position, stating "I thought it was unethical that *they* [Wagner and Weiland] *only approached* people that were known not to have a good working relationship with [Garabedian]." *Redding Dep.* at p.9 (emphasis added).

Other members of the staff also support that the managers initiated conversations regarding Garabedian. Kenneth Goin, the kitchen manager, stated, "I was questioned many times

---

[3] Jacklyn Brehmer, a server and shift leader for Lone Star, stated, "I know that when Mark had came [sic] back the district manager [Wagner] and regional manager [Weiland] were in [the restaurant] constantly, every day. Mark got terminated. And now I believe I seen [sic] my district manager approximately four times within that period, up until this date [December 13, 2006, six months after Garabedian was terminated]. *Brehmer Dep.* at 12. Robert Hobson, the bar manager, confirmed that Wagner and Weiland were there "more often than usual, definitely" and that they often visited on Garabedian's day off. *Hobson Dep.* at 26-27. See also, *Polidori Dep.* at 18-19 (managers "were in there more"); *Goin Dep.* at 33-34 (managers were showing up "more frequently than they did post his termination").

about the performance of Mark [Garabedian] and asked to disclose any information and, you know, if I saw anything to make sure I went to Tim [Wagner] right away, that they needed to get something on him." *Goin Dep.* at 13. Nichole Dunleavy, the head bartender, who said that "the regional manager [Weiland] asked me if I had any problems with Mark Garabedian." *Dunleavy Dep.* at 20. Similarly, Melanie Milke, a server for Lone Star, said "[Wagner] was walking around asking people to say incidents that had happened with Mark [Garabedian] in the past." *Milke Dep.* at 15.

  Defendant argues that, "Whether Mr. Wagner approached employees about Mr. Garabedian's conduct and performance or whether employees first approached Mr. Wagner is also immaterial to the reason for his termination." *Def.'s Reply*, p.7. While that may ultimately prove to be true, the inconsistency is glaring and it is material in establishing an inference of causation.

  A second inconsistency involves the dates on which Garabedian received disciplinary memos and whether Lone Star took any disciplinary action before or after it knew he intended to take FMLA leave. Garabedian stated that he informed the defendant he would be taking FMLA leave in late January of 2006. Wagner authored four disciplinary memos to Garabedian, all of which have a hand-written date of January 20, 2006, and an earlier, typed date crossed out. Garabedian repeatedly stated in his deposition that he wasn't sure when he saw the memos and would have to rely on the January 20, 2006 date as being accurate. *Id.* at 176-190. Wagner stated that the memos were actually written on the typed dates, and not on January 20, 2006. I note that one of the memos shows a typed date of "December 14, 2005," yet states that "I discussed this incident briefly on December 14th, and again in detail on *December 21, 2006*."

8

*Garabedian Dep.*, *Ex. 8.* Although the year may very well have been a typographical error, as Garabedian was not employed by Lone Star in December of *2006*, the mention of a meeting held one week after the alleged date of the memo is an error of another kind. Viewing the facts in the light most favorable to the plaintiff, as required in a summary judgment motion, I conclude the memos were written on January 20, 2006, and therefore that the discipline coincided with Garabedian's notice to his employer that he would be taking FMLA leave.

     D.  Weaknesses, Implausibility, and Contradictions

Lone Star's position is that Garabedian was fired "based on an accumulation of performance-related issues, including insubordination, unprofessional conduct and physical contact with employees." *Def. Mot. Summ. J.* at 16. In support of this assertion, Lone Star points to the July 1, 2006 meeting and alleges that Garabedian was belligerent, raised his voice, and failed to control his temper.

However, there is evidence from which a reasonable factfinder could conclude that Lone Star's explanation is implausible because the plaintiff's managers caused him to act in a manner they classified as insubordinate at the meeting at which he was terminated.[4] Defendant argues:

> When Mr. Weiland and Mr. Wagner sat down to discuss issues and problems with Mr. Garabedian, he became belligerent and raised his voice. This was yet another incident of insubordinate behavior and failure to control his temper. During this meeting, which was only days after the district manager disciplined Mr. Garabedian for touching another employee and reiterated the company's policy against physical contact, Mr. Garabedian made physical contact with Lone Star's regional manager while describing (and admitting) how he had touched the subordinate employee. In other words, by his own admission, at the same time he was being reprimanded for violating a company policy against touching other employees, Mr. Garabedian repeated the violation.

---

[4]This evidence may also be considered by a reasonable factfinder to be an implausible explanation which favors a finding of pretext.

*Def's Mot. Summ. J.*, at 17.  Or, in other words, viewed in the light most favorable to the plaintiff, at a meeting to discuss alleged improper physical contact between the plaintiff and a subordinate employee, Garabedian showed his managers his version of what happened as requested by his managers, and was fired for reenacting the incident by touching a manager.[5]

Further, the deposition testimony of Goin, Lone Star's kitchen manager, contradicts the defendant's position that Garabedian was fired because he was insubordinate.  Goin did not want to work with Garabedian and stated that Wagner had assured him that "Mark [Garabedian] would not be coming back from his leave and that he had hired already [sic] another general manager with [the Middletown] store in mind."  *Goin Dep.* at 16.  Goin also stated that Weiland said to him over a series of meetings, "we want to get him [Garabedian] out of here."  *Id.* at 14.

Alone, Goin's statement does not prove that Lone Star's reason for wanting Garabedian out was because of FMLA leave.  However, at this early stage in the proceedings, the plaintiff has shown enough weaknesses, implausibilities, and contradictions to allow a factfinder to find causation and to reasonably disbelieve Lone Star's proffered reasons.  "To survive summary judgment the plaintiff need not also come forward with additional evidence of discrimination beyond his or her prima facie case."  *Fuentes*, 32 F.3d at 764.

---

[5]Wagner stated in his deposition that Garabedian "was explaining how he was touching people and put his hand on [Weiland] a couple of different times and [Weiland] made the comment, 'Please don't touch me anymore.  I would appreciate it if you would not make contact with me.'"  *Wagner Dep.* at 100.  Wagner also said that he believed that Garabedian only touched Weiland in one demonstration and that the only other time he touched Weiland was to "reach out and grab his arm" as Garabedian was reading a memo when he didn't agree with what was said in the document.  *Id.* at 101.
    Weiland stated that Garabedian was terminated for his insubordination as evidenced by physical contact and agitation.  Weiland said Garabedian was insubordinate because of his "repeated unwelcome contact, . . . physical contact by him to myself [sic]."  *Weiland Dep.* at 23.  However, Weiland admitted that he believed Garabedian's physical contact was made in an effort to demonstrate what he had been accused of doing to another employee.  *Id.*

III.  Conclusion

Garabedian was granted  FMLA leave for twelve weeks in early 2006 and was reinstated to exactly the same position when he returned.  His claim for interference therefore fails.  However, the plaintiff was terminated just forty-five days later and has provided evidence of a pattern of antagonism, inconsistencies in the defendant's testimony, and implausibilities in the proffered reason for his termination.  Therefore, a factfinder could reasonably disbelieve Lone Star's articulated legitimate reason for Garabedian's termination and summary judgment on the retaliation claim must be denied.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MARK GARABEDIAN              :        CIVIL ACTION
                             :
        v.                   :
                             :
LONE STAR STEAKHOUSE & SALOON :        NO. 06-3115

## ORDER

AND NOW, this          day of June, 2007, after considering defendant's memorandum in support of summary judgment (Dkt. #13), plaintiff's response (Dkt. #15), and defendant's reply (Dkt. #16), it is hereby ORDERED that defendant's motion for summary judgment (Dkt. #12) is GRANTED as to plaintiff's interference claim set forth in Count I of the complaint and DENIED as to plaintiff's retaliation claim set forth in Count II of the complaint.

                                    BY THE COURT:


                                     /s/ J.William Ditter, Jr.
                                    J. WILLIAM DITTER, JR., S.J.